UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-24087-BLOOM/Elfenbein

JOHNNY TEIXEIRA JARDIM,

    Petitioner,
v.

BARBARA YAILYN PEREZ PAEZ,

    Respondent.
_____/

## ORDER GRANTING PETITION

**THIS CAUSE** is before the Court following an evidentiary hearing on November 4, 2025 and November 26, 2025. ECF Nos. [39],[44]. On September 8, 2025, Petitioner Johnny Teixeira Jardim filed a Verified Petition for Return of Children to Venezuela and Issuance of Show Cause Order ("Petition"). ECF No. [1]. On October 8, 2025, Respondent Barbara Yailyn Perez Paez filed a Verified Answer and Affirmative Defenses. ECF No. [15]. The Court has considered the testimony at the evidentiary hearing, the exhibits admitted into evidence. Upon request of the Court, the parties submitted post-evidentiary arguments, findings of fact, and conclusions of law. *See* ECF Nos. [47],[49]. The Court has considered the Petition, the supporting and opposing submissions, the testimony and evidence received, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is granted.

**I.    FINDINGS OF FACT**

The following findings of fact are based on the testimony elicited during trial, the evidence entered into the record, and the parties' submissions. Petitioner and Respondent met in Venezuela in 2012 and began living together in August 2015. ECF No. [47] at 9. Minor children M.J.T.P. ("MJ") and E.J.T.P ("EJ") were born to Petitioner and Respondent in Venezuela on

Case No. 25-cv-24087-BLOOM/Elfenbein

September 2, 2015 and January 15, 2021, respectively. ECF No. [1-1]. Petitioner and Respondent lived together in Venezuela for approximately nine years until they separated in 2024. The children lived and attended school in Venezuela for their entire lives. Respondent has family in the United States and had traveled to the United States with the children in previous years. Each time, Respondent timely returned the children to Venezuela. ECF No. [49] ¶ 35. On June 14, 2024, Petitioner gave Respondent permission to take MJ and EJ to the United States to see her family on June 26, 2024 and to return to Venezuela on September 18, 2024. ECF No. [1-2]. On September 6, 2024, Respondent texted Petitioner and stated that she did not want to return to Venezuela with the children. ECF No. [48-5]. Respondent stated:[1]

> I would like to talk to you. [MJ] just received a scholarship to study at school for the English course. I just arrived, and with his drawings, there are [sic] a class that accumulates points toward the scholarship at university. I think its great for his future. That's why I'm thinking about staying and giving them a better life here. Obviously, this decision isn't easy for you, but I would like us to think about giving them a better future, and for you to be able to come visit him every year. He also wants to try out to play for Real Madrid Junior, and I would like to take him to see how he does. They won't need anything here, and it's up to you to give him what you were giving him between school and food there. Otherwise, they won't lack anything.
>
> In Venezuela, I'm not doing well financially. Here, I have many options to give the children a better life.
>
> ECF No. [48-5] at 1.

In response, Petitioner texted "I'm telling you right now, don't even think about it . . . You stay, I'll stay with the children[.]" *Id.*

Respondent's mother and two sisters live in South Florida. ECF No. [49] ¶ 31. Respondent's mother applied for asylum in the United States nine years ago and her sisters applied for asylum six and eleven years ago, respectively. *Id.* Respondent's grandmother and aunts also live in the United States. *Id.* ¶ 32. Respondent testified that, although she was

---

[1] The messages were entered into evidence having been translated from Spanish to English.

2

previously aware that asylum existed, she did not consider seeking asylum in the United States until she had already arrived in the United States. Respondent testified that it was not until she "saw the difference of how my child was feeling, that I had a future with the help of my family because I didn't have the support of anybody in Venezuela," that she decided to remain in the United States. In December 2024, Respondent filed an Application for Asylum and for Withholding of Removal for herself and her children. ECF No. [40]. The Application is still pending.

In her Answer, Respondent asserted the following affirmative defenses: (1) Petitioner has consented and/or acquiesced to the removal and retention of the children in the United States; (2) Petitioner filed the instant Petition more than a year after the wrongful retention in the United States and the children are well settled in their new environment; (3) the children would be at grave risk of harm if returned to Venezuela; (4) the mature child exception applies with regard to MJ. ECF No. [15] at 8-9.

## II.   LEGAL STANDARD

"The Hague Convention seeks 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence.'" *Calixto v. Lesmes*, 909 F.3d 1079, 1083 (11th Cir. 2018) (quoting *Hanley v. Roy*, 485 F.3d 641, 644 (11th Cir. 2007)). The Hague Convention allows an individual to "petition a court authorized to exercise jurisdiction in the place where a child is located for the return of the child to his habitual residence in another signatory country." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013). The Convention and its implementing legislation "empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *Gomez v.*

3

*Fuenmayor*, 812 F.3d 1005, 1010-11 (11th Cir. 2016) (quoting 22 U.S.C. § 9001(b)(4)). Accordingly, the Court's role is limited to acting as a gatekeeper to restore the parties to the pre-abduction or pre-retention status quo so that issues of child custody may be determined in the proper contracting state. *Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) (citing *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4-5 (2014); *Abbott v. Abbott*, 560 U.S. 1, 9 (2010); *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004)).

The International Child Abduction Remedies Act ("ICARA") is the Convention's implementing legislation in the United States. "A petitioning parent must prove 'by a preponderance of the evidence, that her child was wrongfully removed or retained within the meaning of the Convention.'" *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020) (quoting *Chafin*, 742 F.3d at 938)). A removal is "wrongful" if:

a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention, those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Id.* (quoting Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 3.).

Custody rights may arise "by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." Convention, art. 3. For purposes of the Convention, rights of custody "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention, art. 5(a).

"The respondent who opposes return has the burden of establishing 'that one of the exceptions set forth in article 13b or 20 of the Convention applies' by clear and convincing

evidence, or 'that any other exception set forth in article 12 or 13 of the Convention applies,' by a preponderance of the evidence." *Ovalle v. Perez*, No. 16-cv-62134, 2016 WL 6082404, at *7 (S.D. Fla. Oct. 18, 2016), *aff'd*, 681 F. App'x 777 (11th Cir. 2017) (quoting 22 U.S.C. § 9003(e)(2)). Those exceptions include: (1) where more than a year has elapsed since the wrongful retention and the child is well-settled in the new environment; (2) the petitioner was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; (3) where there is a grave risk that the child's return would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation; and (4) the return of the child would not be permitted under the fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms. *Furnes v. Reeves*, 362 F. 3d 702, 712 & n.8 (11th Cir. 2004), *abrogated on other grounds by Lozano*, 572 U.S. at 10. "These affirmative defenses are to be narrowly construed to effectuate the purposes of the Convention and, even if proven, do not automatically preclude an order of return." *Baran v. Beaty*, 526 F.3d 1340, 1345 (11th Cir. 2008). "As the Convention's official commentary has noted, narrow interpretations of the exceptions are necessary to prevent them from swallowing the rule and rendering the Convention 'a dead letter.'" *Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016) (quoting Elisa Perez–Vera, Explanatory Report: Hague Conference on Private International Law, in 3 Acts and Documents of the Fourteenth Session 426 (1980)).

### III.   DISCUSSION

#### A.   *Prima Facie* Case

Respondent concedes that Petitioner has "established a *prima facie* case in support of his Petition, and would therefore be entitled to the relief sought therein[,]" but argues that she has

5

"met her burden of proof as to her first, second and fourth[2] Affirmative Defenses[.]" ECF No. [49] ¶ 60, 69. Indeed, the Court finds that Petitioner has established a *prima facie* case that Respondent wrongfully retained MJ and EJ in the United States: (1) the children were habitual residents of Venezuela immediately before they were brought to the United States; (2) Respondent's retention of the children in the United States breached Petitioner's custody rights under Venezuelan law; and (3) Petitioner had been exercising his custody rights at the time of retention. *See Berenguela-Alvarado v. Castanos,* 950 F.3d 1352, 1358 (11th Cir. 2020).

First, given that the children lived and went to school in Venezuela until they were brought to the United States in June 2024, the children were habitual residents of Venezuela. Second, Petitioner's custody rights were breached under Venezuelan law. During her testimony, Respondent admitted that she violated the travel permit issued by a Venezuelan judge, in which Petitioner consented to the children traveling to the United States solely from June 26, 2024 to September 18, 2024. ECF No. [1-2] at 3. Third, Petitioner also put forward credible evidence that he had been exercising his custodial rights over the children at the time of their retention by Respondent. He testified that he regularly spent time with MJ and EJ in Venezuela when he came home from work, and they would go to the beach, pool, and parks together. Because Petitioner has established a *prima facie* case by a preponderance of the evidence, the burden shifts to Respondent to prove her affirmative defenses.

---

[2] Respondent concedes in her Proposed Findings of Fact and Conclusions of Law that her "third Affirmative Defense has not been established under law." ECF No. [49] ¶ 63. She acknowledges in her recommended findings of fact that "there is not clear and convincing evidence that the parties' children would themselves be at 'grave risk of harm' if forced to return to Venezuela." *Id.* ¶ 57.

B. Affirmative Defenses[3]

i. Consent/Acquiescence

Respondent's first affirmative defense is that "Petitioner has consented and/or acquiesced to the removal and retention of the children in the United States." ECF No. [15] at 8. This affirmative defense must be proven by a preponderance of the evidence. *Berenguela-Alvarado*, 950 F.3d at 1359 (citing Convention, art. 13(a); 22 U.S.C. § 9003(e)(2)(B)). Although the consent "needn't be formal . . . [t]he focus of the court's inquiry should be on the petitioning parent's '*subjective intent*,' and should take into account '[t]he nature and scope of the petitioner's consent, and any conditions or limitations' on that consent." *Id.* (quoting *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005)).

Respondent has not put forward any evidence to support this affirmative defense. Respondent solely argues "[t]he petition does not contain any allegations regarding the Mother's or Father's actions from September 6, 2024 until 'the end of August, 2025.'" ECF No. [49] ¶ 5. However, it is undisputed that Petitioner agreed to permit the children to go to the United States with Respondent from June 24, 2024 to September 18, 2024. ECF No. [1-2]. There is no evidence that Petitioner consented to the children remaining in the United States beyond that period. Indeed, Petitioner admitted into evidence text messages between him and Respondent showing that when Respondent told Petitioner that she did not intend to return to Venezuela, Petitioner immediately objected. ECF No. [48-5]. On September 6, 2024, four minutes after Respondent texted Petitioner "I'm thinking about staying [in the United States] and giving [the children] a better life here[,]" Petitioner responded, "I'm telling you right now, don't even think about it" and "You stay, I'll stay with the children[.]" *Id.*

---

[3] Because Respondent concedes that she has not met her burden of proof on her third affirmative defense, the Court only addresses the first, second, and fourth affirmative defenses. ECF No. [49] ¶ 63.

Respondent suggests that the Court should interpret the fact that Petitioner "waited more than one year after September 6, 2024 . . . to file his petition in this case[,]" as evidence that he consented to or acquiesced in the removal of the children. ECF No. [49] ¶¶ 8, 16. However, as Respondent acknowledges, Petitioner testified that "he tried to take action in Venezuela by contacting an attorney there and filing papers under Venezuelan law[.]" *Id.* ¶ 17. Respondent points out that Petitioner did "not identify the attorney and he did not introduce any documents to support that testimony." *Id.* However, Petitioner's testimony was credible, and the record supports that he did not consent or acquiesce. Moreover, as Respondent is asserting the affirmative defense of consent or acquiescence, she has the burden to prove the defense by a preponderance of evidence. Respondent has failed to satisfy her burden for the first affirmative defense.

    **ii.   Settled Child**

Respondent's second affirmative defense is that more than one year has elapsed since the children's unlawful retention, and they are well-settled in their new environment. ECF No. [15] at 8 (citing *Furnes*, 362 F. 3d at 712; Hague Convention, art. 12. This affirmative defense must be proven by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B).

As an initial matter, the Court must determine whether more than a year has elapsed since the children's unlawful retention. As Respondent points out, Petitioner alleged in his Petition that the wrongful retention "began on or about September 6, 2024," when Respondent sent Petitioner a text stating that "she was not going to return the Children to Venezuela at the end of the Children's visits to Florida, which was to be September 18, 2024." ECF No. [1] ¶ 2. However, in his Proposed Findings of Fact and Conclusions of Law, Petitioner recedes from that position and argues that "[c]ourts have held that the wrongful retention in Art. 12 begins when the agreed date

8

passes, not when the Mother gave her earlier text notice on September 6, 2024." ECF No. [47] at 28-29 (citing *Chechel v. Brignol,* No. 510-cv-164, 2010 WL 2510391, at *7 (M.D. Fla. June 21, 2010). Indeed, "courts have uniformly held that the wrongful retention begins when the agreed date passes, not when the earlier notice of intent is given." *Chechel*, 2010 WL 2510391, at *7. Pursuant to the travel permit Petitioner signed, Respondent's wrongful retention of the children began on September 18, 2024, when Respondent did not board the flights back to Venezuela that were specifically outlined in the permit. ECF No. [1-2] at 3. Because Petitioner filed his Petition on September 8, 2025, less than a year has elapsed since the wrongful retention, and Respondent is foreclosed from asserting her second affirmative defense.

However, even if more than a year had elapsed since the wrongful retention before Petitioner filed his Petition, the Court would not find that the children are settled in their new environment. The Eleventh Circuit has stated that a child is considered "settled" under ICARA and the Convention where:

> a preponderance of the evidence shows that the child has significant connections to their new home that indicate that the child has developed a stable, permanent, and nontransitory life in their new country to such a degree that return would be to the child's detriment . . . . Although all returns will necessarily involve some level of disruption to the child or children involved, we caution that disruption should not be considered *per se* detrimental. Rather, the "settled" inquiry requires courts to carefully consider the totality of the circumstances.

*Fernandez v. Bailey*, 909 F.3d 353, 361 (11th Cir. 2018) (internal citations omitted).

Respondent argues that the children's school records, Respondent's testimony, and the testimony of the children's aunt demonstrate that the children are well-settled in the United States. ECF No. [49] ¶ 55. However, the evidence offered by Respondent speaks primarily to the children's happiness in the United States, not whether they have developed "a stable, permanent, and nontransitory life in their new country[.]" *Fernandez,* 90 F.3d at 361. The Court considered

9

the testimony of Plaintiff's expert who pointed out that a pending asylum petition does not provide any status in the United States. As such, the glaring obstacle to finding that the children are settled in the United States is that, although Respondent has filed an asylum application, ECF No. [40], there appears to be nothing that would protect the MJ, EJ, or Respondent from being deported at any moment. *See In re Ahumada Cabrera,* 323 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004) (stating that, although the child attends school in the United States regularly, "any stability she may enjoy in the United States is significantly undermined by the Respondent's uncertain immigration status").

In *De La Riva v. Soto*, the court considered the circumstances of a seven-year-old child who had been in the United States for two years. 183 F. Supp. 3d 1182, 1192 (M.D. Fla. 2016). The court acknowledged several factors that weighed in favor of the child being settled in the United States, acknowledging testimony that child "seems to be doing well in Florida[,]" has lots of clothes and toys, lives in a private, two-bedroom, two bathroom apartment, consistently attends school in Florida, where he performs satisfactorily, has learned English, has many relatives in Florida whom he seems often, and participates in extracurriculars. *Id.* at 1200-1201. However, despite all of these factors, the court found that they "are counter-balanced and outweighed by the fact that [the child's] financial security in the United States is unstable, and his stay here may come to an abrupt end, since Respondent is here illegally, without a work permit, and could be 'subject to deportation at anytime.'" *Id.* at 1201 (quoting *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1260 (M.D. Fla. 2008)). Therefore, the court concluded it was "preferable to return [the child] to Mexico now, rather than to risk the Child being forced to return when he is older and more fully immersed in life in the United States." *Id.*

Respondent concedes that "by staying in the United States beyond the expiration date of

her travel visa, she was in violation of that visa[.]" ECF No. [49] ¶ 37. Petitioner's expert, Rebeca Sánchez-Roig, who has spent 29 years practicing immigration law,[4] testified that filing an application for asylum does not inherently protect Respondent or the children from deportation. Although testimony elicited during the hearing indicates that Respondent has family in Florida and that the children are doing well, the Court is unable to find that the children are settled in a country where—based on unrebutted testimony—they could be deported at any moment. *c.f. Alvarez Romero v. Bahamonde,* No. 20-cv-104, 2020 WL 8459278, at *15 (M.D. Ga. Nov. 19, 2020) (children without legal status in the United States were settled where "Respondent's immigration attorney . . . testified during the hearing [that] neither the children nor Respondent are under immediate threat of removal"), *aff'd sub nom. Romero v. Bahamonde*, 857 F. App'x 576 (11th Cir. 2021). Therefore, Respondent has not met her burden as to her second affirmative defense.

iii. **Mature Child**

Respondent argues that the "mature child exception" applies to MJ, the older of the two children, who is ten years old. ECF No. [15] at 9 (citing *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347 (M.D. Fla. 2002)). The Hague Convention provides that the Court may "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Convention, art. 13. This must be proven by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B). "The text of the Convention restricts the age and maturity exception to cases in which the child states an objection, rather than a mere preference against repatriation." *de Jesus Joya*

---

[4] Sánchez-Roig served as an attorney for the United States Department of Homeland Security, Immigration and Customs Enforcement for 17 years. ECF No. [48-23] at 2. She currently is the Senior Managing Attorney for Catholic Legal Services, in which capacity she "[p]rovide[s] substantive legal guidance in complex immigration litigation[.]" *Id.* at 1.

11

*Rubio v. Alvarez*, 526 F. Supp. 3d 1186, 1205 (S.D. Fla. 2021)

The Court has little basis upon which to determine (1) whether MJ has attained an age and degree of maturity at which it is appropriate to take into account his views or (2) the nature of his views regarding returning to Venezuela. Although courts have found children as young as eight to be sufficiently mature for the court to consider the child's view, nearly all of those courts had the opportunity to hear from the child directly or from a medical professional or guardian *ad litem* who spoke with the child and then presented their findings to the court.[5] *See de Jesus Joya Rubio*, 526 F. Supp. 3d at 1192 (psychologist evaluated twelve-year-old and prepared expert report); *Colon v. Mejia Montufar*, 470 F. Supp. 3d 1280, 1289-90 (S.D. Fla. 2020) (same); *Blondin v. Dubois*, 238 F.3d 153, 167 (2d Cir. 2001) (district court and psychiatrist evaluated eight-year-old), *abrogated on other grounds by Golan v. Saada*, 596 U.S. 666 (2022); *Sadoun v. Guigui*, No. 16-cv-22349, 2016 WL 4444890, at *10 (S.D. Fla. Aug. 22, 2016) (guardian *ad litem* interviewed fourteen and twelve-year-olds); *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1257 (M.D. Fla. 2008) (seven and nine-year-olds evaluated by psychologist); *c.f. Mendez Lynch*, 220 F. Supp. 2d at 1361-62 (court accepted undisputed and uncontradicted testimony that nine-year-old "has attained an age and degree of maturity sufficient to take his opinion into account" and he "wants to stay in the United States and does not want to go to Argentina.").

MJ did not testify at the evidentiary hearing. The parties offered contradictory testimony as to whether MJ is sufficiently mature such that the Court should take his views into account. Indeed, both parties have a clear interest in whether they describe MJ as sufficiently mature to

---

[5] Petitioner submitted an attestation from an educational psychologist at MJ's school in Venezuela. ECF No. [48-17]. The psychologist states she "validate[s] and certif[ies] that the information reflected in the psychological report issued in March 2022 is reliable and reflects what both parents stated during the previous interviews." *Id.* However, Petitioner did not submit the March 2022 report to the Court. Regardless, an evaluation of MJ in March 2022, before he was removed to the United States, would not impact the Court's evaluation of his maturity or wishes as of December 2025.

make such a decision. However, without having heard from MJ directly or any expert testimony regarding his wishes, the Court has no basis upon which to make such a determination. Therefore, Respondent has not met her burden as to the fourth affirmative defense.

Because Petitioner has established a *prima facie* case for granting the Petition and Respondent has not met her burden on any of the affirmative defenses, the Petition is granted.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition, **ECF No. [1],** is **GRANTED.**

2. The minor children, MJ and EJ, shall be **RETURNED** to Venezuela.

3. Unless otherwise agreed by the Parties in writing, the children shall be returned to Venezuela **no later than January 5, 2026**.

4. Respondent may accompany the children to Venezuela if she so chooses.

5. The children shall not be removed from the Southern District of Florida pending their return to Venezuela.

6. Attorney Andrew Michael Kassier shall return the children's passports when he is satisfied the children will be returned to Venezuela.

7. Pursuant to 22 U.S.C. § 9007, Petitioner is entitled to reimbursement by Respondent of the necessary expenses incurred during the course of proceedings in this action. Petitioner shall file an affidavit setting forth the allowable costs and fees he seeks to recover no later than **January 19, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida on December 19, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:    Counsel of Record